**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

SHANE SMITH ENTERPRISES, INC.                                                    PLAINTIFF

v.                                         No. 4:06CV00376 JLH

BANK OF AMERICA, N.A.                                                          DEFENDANT

**OPINION AND ORDER**

      Shane Smith Enterprises, Inc., brought this suit in the Circuit Court of Pulaski County against

Bank of America, N.A., alleging negligence, common-law conversion, and conversion under the

Uniform Commercial Code.  It alleged that Bank of America was negligent and converted Shane

Smith Enterprises' funds when it accepted checks for deposit from Melvin Lewis Walker that were

stolen from Shane Smith Enterprises by its secretary, Jessica Hopson.  Bank of America removed

the action to federal court and has moved to dismiss Shane Smith Enterprises' amended complaint

or, in the alternative, for summary judgment.  Shane Smith Enterprises has moved for partial

summary judgment on its claims for conversion.  For the following reasons, Shane Smith

Enterprises' motion for partial summary judgment is denied.  Bank of America's motion for

summary judgment is granted in part and denied in part.

**I.**

      Because the parties have submitted and the Court reviewed matters outside of the pleadings,

Bank of America's motion will be treated as a motion for summary judgment.  FED. R. CIV. P.

12(b)(6); *BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 687-88 (8th Cir. 2003).  A court

should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving

party, demonstrates that there is no genuine issue of material fact and that the  moving party is

entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005).  A genuine issue of material fact exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

## II.

Shane Smith Enterprises, Inc., is an Arkansas corporation that owns and operates tobacco and liquor stores.  Shane Smith is the sole officer and owner of Shane Smith Enterprises.  Jessica Hopson was an employee of Shane Smith Enterprises.  She was in charge of handling all of the bookkeeping for Shane Smith Enterprises as well as picking up the mail, opening the mail, and paying bills.  Hopson also completed all the bank deposit tickets and deposit slips for Shane Smith Enterprises and was in charge of depositing all checks and payments received by Shane Smith Enterprises into its Regions Bank account.  Shane Smith Enterprises was not a customer of Bank of America.

In May 2005, Hopson began stealing checks from the mail of Shane Smith Enterprises.  Hopson's boyfriend, Melvin Lewis Walker, moved to Nevada and set up a bank account there with Bank of America under the name "Melvin Lewis Walker DBA S. Smith Enterprises."  When Walker arrived in Las Vegas, he called a branch of the Bank of America and was informed as to the documents that he would need to open a business account.  The information included the address of the government office from which he could obtain needed documents.  Then, when he opened the account, Walker provided Bank of America his Arkansas driver's license and a file-marked Nevada Certificate of Business: Fictitious Firm Name with an Arkansas address and a Nevada address on the certificate.  He also provided his Social Security number.  Walker and Hopson then deposited

six of the checks stolen by Hopson into that account.  All of the checks were made payable to either "Shane Smith Enterpri" or "Shane Smith Enterprises."  The bank statements were mailed to a Little Rock address.

Walker returned to Arkansas in August 2005.  He opened a new account at the Bank of America branch in North Little Rock and deposited a seventh stolen check in the new account.  Bank of America discovered that this check was stolen and contacted Smith.  It then closed Walker's Little Rock account.  Smith confronted Hopson who admitted to stealing that check.  Hopson later admitted that she stole all the checks and accepted the sole responsibility for Shane Smith Enterprises' loss.

## III.

Bank of America argues that it is entitled to summary judgment on Shane Smith Enterprises' common-law negligence claim because, as a matter of law, Bank of America did not owe a duty of reasonable care to Shane Smith Enterprises, a noncustomer.  Although the alleged tortious conduct occurred in Nevada, the parties have briefed the issue of the Bank of America's duty under the assumption that Arkansas law applies.[1]  Neither party has asked the Court to apply Nevada law, nor has either party suggested that following Nevada law would yield a different outcome.  Accordingly, the Court will apply Arkansas law to the question of whether Bank of America owed a duty to Shane Smith Enterprises.

---

[1] A district court sitting in diversity applies the law, including the choice-of-law rules, of the state in which it sits.  *Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007).  Arkansas has not overruled the rule of *lex loci delecti*; but neither does it uniformly follow that rule.  *See Schubert v. Target Stores, Inc.*, 360 Ark. 404, 409, 201 S.W.3d 917, 921 (2005); *Miller v. Pilgrim's Pride Corp.*, 366 F.3d 672, 674-75 (8th Cir. 2004).

"The question of what duty is owed is always a question of law and never one for the jury." *Keck v. Am. Employment Agency, Inc.*, 279 Ark. 294, 298, 652 S.W.2d 2, 4 (1983). If no duty is owed, the negligence count must be dismissed as a matter of law. *Mans v. Peoples Bank of Imboden*, 340 Ark. 518, 524, 10 S.W.3d 885, 888 (2000). In cases where a noncustomer asserted a negligence claim against a bank for failing to prevent a customer of the bank from depositing stolen checks, the overwhelming majority of courts have ruled that the bank did not owe a duty of reasonable care to the noncustomer. *See Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 227 (4th Cir. 2002); *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal. App. 4th 472, 478-83, 56 Cal. Rptr. 2d 756, 760-63 (1996); *Weil v. First Nat'l Bank of Castle Rock*, 983 P.2d 812 (Colo. Ct. App. 1999); *Portage Aluminum Co. v. Kentwood Nat'l Bank*, 106 Mich. App. 290, 297-99, 307 N.W.2d 761, 765-66 (1981); *City Check Cashing, Inc. v. Mfrs. Hanover Trust Co.*, 166 N.J. 49, 60-62, 764 A.2d 411, 417-18 (2001); *Gesell v. First Nat'l City Bank of N.Y.*, 24 A.D.2d 424, 425, 260 N.Y.S.2d 581, 581-82 (1965); *Sterner v. Penn*, 159 N.C. App. 626, 631, 583 S.E.2d 670, 674 (2003); *Schleicher v. W. State Bank of Devils Lake*, 314 N.W.2d 293, 297 (N.D. 1982); *Volpe v. Fleet Nat'l Bank*, 710 A.2d 661, 664 (R.I. 1998); *Miller-Rogaska, Inc. v. Bank One, Tex., N.A.*, 931 S.W.2d 655, 663-64 (Tex. Ct. App. 1996); *Ramsey v. Hancock*, 79 P.3d 423, 427 (Utah Ct. App. 2003); *Zabka v. Bank of Am. Corp.*, 131 Wash. App. 167, 172-73, 127 P.3d 722, 724-25 (Wash. 2005).

One case that found such a duty is *Patrick v. Union State Bank*, where the Alabama Supreme Court held that a bank had a duty to protect a noncustomer from the criminal acts of a customer of the bank. 681 So. 2d 1364 (Ala. 1996). Patrick was separated from her six-month old baby and forced to spend 10 consecutive days in jail because of the check-kiting of a woman who posed as Patrick and used Patrick's stolen temporary driver's license to open an account in Patrick's name.

*Id*. at 1366.  In a later case, the Alabama Supreme Court criticized and distinguished *Patrick*.  *Smith v. Amsouth Bank, Inc.*, 892 So. 2d 905 (Ala. 2004).  In *Smith*, an employee of Specialty Motor Cars stole checks from the business and deposited them in an account named "JCU, Inc. d/b/a Specialty Motor Cars."  *Id*. at 907.  The court held that the depository bank owed no duty to protect the noncustomer owner of Specialty Motor Cars from the employee's wrongful acts.  *Id*. at 909.  *Smith v. Amsouth Bank* is more apposite to this case than *Patrick*.  For additional comment on *Patrick*, see *Zabka*, 131 Wash. App. at 172-73, 127 P.3d at 724-25.  In a footnote in the *Smith* opinion, the Alabama Supreme Court commented, "Every court that has examined the issue has answered that banks owe no duty of care to noncustomers."  893 So. 2d at 909 n.2.  Although the Alabama Supreme Court was not asked to overrule *Patrick* and did not do so, the opinion in *Smith* suggests that Alabama would, if asked, join the courts that have ruled that banks owe no duty of care to noncustomers.

Although the Supreme Court of Arkansas has not addressed this precise issue, it is unlikely that the court would depart from the mainstream of American jurisprudence on this point.  It would be an uncommon occurrence for the Supreme Court of Arkansas, when deciding an issue of first impression in that State, to adopt a rule rejected with near unanimity in other states.  Moreover, the Arkansas General Assembly has prescribed in great detail the duties of banks in negotiating instruments.  Although the Supreme Court of Arkansas could impose a common-law duty in addition to the duties prescribed in the Arkansas commercial code, it seems more likely that the court would leave the decision of whether to impose a new duty of care on banks in Arkansas to the Arkansas General Assembly, especially in light of § 4-3-405(b) of the Arkansas Code, which, as will be

discussed *infra*, specifically determines the rights and liabilities of persons in circumstances such as those presented here.

Shane Smith Enterprises requests the Court to find that Bank of America assumed a duty to noncustomers when it implemented a fraud filter system.  Under Arkansas law, one who voluntarily assumes a duty owed another is liable to a third party injured by a breach of that duty.  *See Boerner v. Brown & Williamson Tobacco Corp.*, 260 F.3d 837, 848 (8th Cir. 2001).  Here, the undisputed evidence is that Bank of America adopted the fraud filter system solely to minimize its own risks. None of the cases cited by Shane Smith Enterprises suggest an interpretation of the doctrine of voluntary assumption that is so sweeping as to encompass conduct that is purely self-interested.  *Cf. Wilson v. Rebsamen Ins., Inc.*, 330 Ark. 687, 695-96, 957 S.W.2d 678, 681 (1997) (finding that insurer had voluntarily assumed duty to employee of company with which insurer had contracted to make inspections and provide recommendations regarding safety); *Capel v. Allstate Ins. Co.*, 78 Ark. App. 27, 40-42, 77 S.W.3d 533, 542-43 (2002) (finding a voluntarily assumed duty where insurer recommended to its insured a contractor who was neither bonded nor insured); *see also Motorcity of Jacksonville, Ltd. v. Se. Bank N.A.*, 83 F.3d 1317, 1342 (11th Cir. 1996), *vacated on other grounds sub nom. Hess v. F.D.I.C.*, 519 U.S. 1087, 117 S. Ct. 760, 136 L. Ed. 2d 708 (1997) (holding that bank's customer audit system, which was instituted purely to protect bank's own self interest, did not create a duty to customers because voluntary assumption under Florida law "applies only where actions are undertaken *for the benefit of another*") (emphasis in original)).  If it were the law that a fraud filter system implemented solely for minimizing a financial institution's own risk created a duty to all noncustomers to prevent fraud, no bank would ever implement a fraud filter system. Bank of America did not assume a duty to Shane Smith Enterprises when it instituted its fraud filter

system.  Summary judgment is granted to Bank of America on Shane Smith Enterprises' negligence claim.

## IV.

Shane Smith Enterprises has alleged claims for common-law and statutory conversion against Bank of America.[2]  To establish a common-law claim for conversion, a plaintiff must prove that the defendant wrongfully committed a distinct act of dominion over the property of another, which is a denial of or is inconsistent with the owners' rights.  *McQuillan v. Mercedes-Benz Credit Corp.*, 331 Ark. 242, 247, 961 S.W.2d 729, 732 (1998).  A plaintiff establishes a statutory claim for conversion by showing that a bank made or obtained payment with respect to an instrument for a person not entitled to enforce the instrument or receive payment. ARK. CODE ANN. § 4-3-420(a).

Both claims are governed by § 4-3-405(b) of the Arkansas Code.  Section 4-3-405(b) states:

> For the purpose of determining the rights and liabilities of a person who, in good faith, pays an instrument or takes it for value or for collection, if an employer entrusted an employee with responsibility with respect to the instrument and the employee or a person acting in concert with the employee makes a fraudulent indorsement of the instrument, the indorsement is effective as the indorsement of the person to whom the instrument is payable if it is made in the name of that person. If the person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.

Under that statute, if an employee who has been entrusted with responsibility over a check makes a fraudulent indorsement of a check, and a bank in good faith accepts the check for deposit, then "the indorsement is effective as the indorsement of the person to whom the instrument is payable if it is

---

[2] Again, the parties have briefed the issue based on the assumption that Arkansas law applies.  Neither party has asked the Court to apply the law of Nevada, nor has either party argued that Nevada law would dictate a different result.

made in the name of that person." ARK. CODE ANN. § 4-3-405(b).  The Article 3 definition of "good

faith" includes not only "honesty in fact" but also "the observance of reasonable commercial

standards of fair dealing."  *See* ARK. CODE ANN. § 4-3-103(a)(5).  Thus, § 4-3-104(4) defines "good

faith" essentially as honesty in fact plus fair dealing, with the "fair dealing" aspect qualified or

limited as "reasonable commercial standards of fair dealing."  There is no evidence, nor even an

argument, that Bank of America failed to exercise good faith so defined.

The Commentary to § 4-3-405 describes the application of this section to facts substantially

identical to the facts presented here:

> Section 3-405 [ARK. CODE ANN. § 4-3-405] is addressed to fraudulent indorsements
> made by an employee with respect to instruments with respect to which the employer
> has given responsibility to the employee.  It covers two categories of fraudulent
> indorsements: indorsements made in the name of employer to instruments payable
> to the employer and indorsements made in the name of payees of instruments issued
> by the employer.  This section [ARK. CODE ANN. § 4-3-405] applies to instruments
> generally but normally the instrument will be a check.  Section 3-405 [ARK. CODE
> ANN. § 4-3-405] adopts the principle that the risk of loss for fraudulent indorsements
> by employees who are entrusted with responsibility with respect to checks should fall
> on the employer rather than the bank that takes the check or pays it, if the bank was
> not negligent in the transaction.  Section 3-405 [ARK. CODE ANN. § 4-3-405] is based
> on the belief that the employer is in a far better position to avoid the loss by care in
> choosing employees, in supervising them, and in adopting other measures to prevent
> forged indorsements on instruments payable to the employer or fraud in the issuance
> of instruments payable to the employer or fraud in the issuance of instruments in the
> name of the employer.  If the bank failed to exercise ordinary care, subsection (b)
> [ARK. CODE ANN. § 4-3-405(b)] allows the employer to shift loss to the bank to the
> extent the bank's failure to exercise ordinary care contributed to the loss.  "Ordinary
> care" is defined in Section 3-103(a)(7) [ARK. CODE ANN. § 4-3-103(a)(7)].  The
> provision applies regardless of whether the employer is negligent.
>
> * * *
>
> *Case #3*.  The duties of Employee, a bookkeeper, include posting the amounts of
> checks payable to Employer to the accounts of the drawers of the checks.  Employee
> steals a check payable to Employer which was entrusted to Employee and forges
> Employer's indorsement.  The check is deposited by Employee to an account in
> Depositary Bank which Employee opened in the same name as Employer, and the
> check is honored by the drawee bank.  The indorsement is effective as Employer's

indorsement because Employee's duties include processing checks for bookkeeping purposes. Thus, Employee is entrusted with "responsibility" with respect to the check. Neither Depositary Bank nor the drawee bank is liable to Employer for conversion of the check. The same result follows if Employee deposited the check in the account in Depositary Bank without indorsement. Section 4-205(a) [ARK. CODE ANN. § 4-4-205(a)]. Under subsection (c) [ARK. CODE ANN. § 4-3-405(c)] deposit in a depositary bank in an account in a name substantially similar to that of Employer is the equivalent of an indorsement in the name of Employer.

Shane Smith Enterprises never alleges or argues that Bank of America acted other than in good faith in accepting the checks. Shane Smith Enterprises does not contest, and the evidence establishes, that Hopson was "an employee with responsibility with respect to" the stolen checks. Nor does Shane Smith Enterprises deny that Walker was "a person acting in concert with" Hopson. Shane Smith Enterprises does argue, however, that the bank cannot show as a matter of law that fraudulent indorsements were made "in the name of the person to whom an instrument is payable" for each of the checks at issue in this case.

According to the statute, "an indorsement is made in the name of the person to whom an instrument is payable if . . . the instrument, whether or not indorsed, is deposited in a depositary bank to an account in a name substantially similar to the name of that person." ARK. CODE ANN. § 4-3-405(c). Here, the trade name on Walker's Bank of America account was "S. Smith Enterprises," while the name of the payee on each of the checks stolen by Hopson was either "Shane Smith Enterprises" or "Shane Smith Enterpri." There can be no question that "S. Smith Enterprises," "Shane Smith Enterprises," and "Shane Smith Enterpri" are substantially similar. *See British Caledonian Airways Ltd. v. First State Bank of Bedford, Tex.*, 819 F.2d 593 (5th Cir. 1987) (holding that difference between the payee's name, "Mary Tull Charter Services," and the indorsement of "Mary Toll Charter Services" was a minor discrepancy that did not preclude the application of UCC

§ 3-405 of the Uniform Commercial Code); *W. Cas. & Sur. Co. v. Citizens Bank of Las Cruces*, 676 F.2d 1344 (10th Cir. 1982) (noting that "minor discrepancy in spelling" does not preclude application of UCC § 3-405); *Witten Prods., Inc. v. Republic Bank & Trust Co.*, 102 N.C. App. 88, 401 S.E.2d 388 (1991).

That the account Walker opened was in the name of "Melvin Lewis Walker DBA" in no way alters that conclusion.  Contrary to Shane Smith Enterprises' assertion, the addition of the words "Melvin Lewis Walker DBA" does not signify that the account is for an entity distinct from "Shane Smith Enterprises."  In fact, the names on the account, "Melvin Lewis Walker DBA" and "S. Smith Enterprises," refer to the same person: Melvin Lewis Walker.  "DBA" is commonly understood as "doing business as."  BLACK'S LAW DICTIONARY 403 (7th ed. 1999).  It is used when a person or business association chooses to do business under an assumed name.  An individual may legally transact business under a fictitious name such as a trade name,  57 AM. JUR. 2D *Name* § 66 (2001), and Arkansas law allows the trade name of a business organization to be effective as the name of the organization.  *See* ARK. CODE ANN. § 4-3-401(b) (allowing the signature of a trade name to be binding for purposes of liability on an instrument).  The trade name, however, is not a legal entity, but merely a description of the person doing business under that name.  18A AM. JUR. 2D *Corporations* § 236 (Supp. 2007).  Thus, for an account entitled "Melvin Lewis Walker DBA S. Smith Enterprises," no bank would think it outside the sphere of "normal appearance" were a check deposited in that account to bear the name "Shane Smith Enterprises" or "Shane Smith Enterpri." *Western Casualty*, 676 F.2d at 1346.  For purposes of § 4-3-405(c), "Melvin Lewis Walker DBA S. Smith Enterprises" is therefore substantially similar to "Shane Smith Enterprises" and "Shane Smith Enterpri."  *Cf. In re McMullen Oil Co.*, 251 B.R. 558, 576 (Bankr. C.D. Cal. 2000) (holding that

10

"McMullen Oil Co." and "McMullen Oil Co. Pension Plan" were not "substantially similar" because "a bank is required to know that a pension plan is a different entity, which must have bank accounts separate from those of the business to which it relates"); *Knight Publ'g Co., Inc. v. Chase Manhattan Bank, N.A.*, 125 N.C. App. 1, 10, 479 S.E. 2d 478, 484 (1997) (holding that "Graphic Color Prep" was not substantially similar to "Graphic Image" because the words "Color Prep" signified that "'Graphic Color Prep.' is an entity distinct from 'Graphic Image'").

Because Bank of America has met its burden to show that it deposited checks indorsed in Shane Smith Enterprises' name in good faith, the burden shifts to Shane Smith Enterprises to prove that Bank of America failed to exercise ordinary care and that its failure substantially contributed to the loss. ARK. CODE ANN. § 4-3-405(b); *Continental Cas. Co. v. Fifth/Third Bank*, 418 F. Supp. 2d 964, 972 (N.D. Ohio 2006). Shane Smith Enterprises argues that § 4-3-405(b) imposes on the bank the burden of proving that it acted with ordinary care and that the bank has failed to meet that burden. Shane Smith Enterprises cites as authority *Continental Casualty Co.*, which, as noted, holds that if the bank shows that it acted in good faith the burden shifts to the employer to prove that the bank failed to exercise ordinary care. *Id.*

Ordinary care is "observance of reasonable commercial standards, prevailing in the area in which the person is located, with respect to the business in which the person is engaged." ARK. CODE ANN. § 4-3-103(a)(8). Shane Smith Enterprises points to several facts that it contends show that Bank of America failed to exercise ordinary care, including the following: the bank accepted a fictitious name account opened in Las Vegas, Nevada, by an Arkansas resident with an Arkansas driver's license but no local address to which bank statements could be sent; the bank accepted checks payable to Shane Smith Enterprises for deposit into the account of Melvin Walker DBA S.

11

Smith Enterprises; these checks named Shane Smith Enterprises as the sole payee but had no indorsements, or were marked for deposit only with no further directive, or were indorsed by Walker; and Bank of America's fraud filter system generated notices indicating "Large Deposit - Low Average Balance" and "New DBA Watch." The bank points to the Nevada address on the certificate of Business: Fictitious Firm Name and notes that in some instances the payee was "Shane Smith Enterpri," but otherwise does not seriously dispute these facts.

The difficulty at the summary judgment stage is that neither party has presented evidence as to the reasonable commercial standards prevailing in Las Vegas or anywhere else for banks opening fictitious name accounts and then accepting large deposits into those accounts. At trial, Shane Smith Enterprises will bear the burden of proof on that issue, but in moving for summary judgment Bank of America has the initial burden of demonstrating the absence of genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). Mindful that affidavits are not always required, *see id*., still the Court cannot say that Bank of America has met its burden here. "At a minimum, the moving party must demonstrate that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Hanson v. F.D.I.C.*, 13 F.3d 1247, 1253 (8th Cir. 1994). For summary judgment to be entered on this issue, Bank of America would need to present evidence of the applicable reasonable commercial standards or show that Shane Smith Enterprises cannot present evidence to prove that its conduct fell below those standards. It has done neither. Summary judgment is therefore granted in favor of Bank of America as to the issues arising from the first sentence of § 4-3-405(b) of the Arkansas Code on Shane Smith Enterprises' claims for conversion, but denied as to those issues arising from the second sentence of § 4-3-405(b).

**CONCLUSION**

For the reasons stated above, Shane Smith Enterprises' motion for partial summary judgment is DENIED.  Document #46.  Bank of America's motion for summary judgment is GRANTED IN PART and DENIED IN PART.  Document #36.  Bank of America's motion for summary judgment is granted as to Shane Smith Enterprises' negligence claim.  Bank of America's motion for summary judgment is also granted on the issues arising from the first sentence of § 4-3-405(b) of the Arkansas Code.  Summary judgment is denied as to the issues arising from the second sentence of § 4-3-405(b).

IT IS SO ORDERED this 29th day of June, 2007.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

13